## Trujillo-Diaz v New York City Tr. Auth.

2025 NY Slip Op 30440(U)

February 4, 2025

Supreme Court, New York County

Docket Number: Index No. 159990/2019

Judge: Richard Tsai

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. RICHARD TSAI**

*Justice*

PART     21

-------------------------------------------------------------------------------X

CAMILO TRUJILLO-DIAZ,

            Plaintiff,

- v -

NEW YORK CITY TRANSIT AUTHORITY,
METROPOLITAN TRANPORTATION AUTHORITY,
MANHATTAN AND BRONX SURFACE TRANSIT
OPERATING AUTHORITY and CHARLES W. BELLACK,

            Defendants.

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 159990/2019 |
| MOTION DATE | 04/28/2023 |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document numbers (Motion 003) 64-95

were read on this motion to/for           JUDGMENT - SUMMARY        .

In this action for personal injuries arising out of a motor vehicle collision, defendants now move for summary judgment dismissing the complaint on the grounds that plaintiff did not suffer a serious injury within the meaning of Insurance Law § 5102 (d). Defendants also argue that defendants Metropolitan Transportation Authority and Manhattan and Bronx Surface Transit Operating Authority did not operate or control the bus involved in the collision. Plaintiff opposes the motion.

## BACKGROUND

According to the complaint, on January 17, 2019, plaintiff Camilo Trujillo-Diaz was injured when a bus allegedly operated by defendant Charles W. Bellack made contact with plaintiff's vehicle on Madison Avenue, at or near East 96th Street in Manhattan (Defendants' Exhibit A in support of motion, complaint ¶¶ 31, 47, 48 [NYSCEF Doc. No. 66]).

According to the bill of particulars, plaintiff suffered, among other things, a labral tear and partial tear of the rotator cuff of the right shoulder; cervical disc bulges at C4-C5, C5-C6, and C6-C7; cervical radiculopathy; lumbar disc bulges at L1-L2, L3-L4, L4-L5; lumbar radiculopathy; and thoracic disc herniations at T5-T6, T6-T7, and T7-T8 (defendants' Exhibit C in support of motion, bill of particulars ¶ 12 [NYSCEF Doc. No. 68]). Plaintiff suffered reduced flexibility and range of motion in the right shoulder and cervical, lumbar, and thoracic spine (*id.*). Based on plaintiff's birth year in the bill of particulars (1988), plaintiff was between 30-31 years old at the time of the alleged collision (*see id.* ¶ 2).

**159990/2019 TRUJILLO-DIAZ, CAMILO vs. NEW YORK CITY TRANSIT**
Motion No. 003

Page 1 of 9

[* 1]

1 of 9

Plaintiff testified that his vehicle and the bus were stopped at a light on 96th Street, waiting for the green light to turn right (Defendants' Exhibit E in support of motion, plaintiff's second EBT at 10, lines 16-17; at 11, lines 4-5 [NYSCEF Doc. No. 70]). Plaintiff was in a turning lane to the left of the bus, which was also in a turning lane (*id.* at 10, lines 18-22). When the light turned green, plaintiff had to move forward a little bit, turning to the right at the same time (*id.* at 15, lines 3-15). Three quarters into the turn, plaintiff felt a hard impact to the fender of the passenger's side of his vehicle (*id.* at 19, lines 5-11; at 20, lines 5-6). Plaintiff felt a second impact "in a tiny bit of a second" after the first impact, which then dragged/pulled plaintiff's vehicle towards the front (*id.* at 19, line 5; at 24, lines 3-18). According to plaintiff, his right index finger hit the steering wheel and against the door, and the left side of his body struck the driver's side door (*id.* at 37, lines 7-12; at 37, line 25 through 38, line 12).

## DISCUSSION

"On a motion for summary judgment, the moving party must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. If the moving party produces the required evidence, the burden shifts to the nonmoving party to establish the existence of material issues of fact which require a trial of the action"(*Xiang Fu He v Troon Mgt., Inc.*, 34 NY3d 167, 175 [2019] [internal citations and quotation marks omitted]).

On a motion for summary judgment, "facts must be viewed in the light most favorable to the non-moving party" (*Vega v Restani Const. Corp.*, 18 NY3d 499, 503 [2012] [internal quotation marks omitted]).

Here, defendants contend that plaintiff did not suffer a serious injury within the meaning of Insurance Law § 5102 (d). As an additional ground for summary judgment, defendants also assert that defendants Metropolitan Transportation Authority (MTA) and Manhattan and Bronx Surface Transit Operating Authority (MABSTOA) did not own or operate the bus involved in the collision.

### A. Summary Judgment dismissing the complaint as against the MTA and MABSTOA

As defendants correctly point out, "[i]t is well settled, as a matter of law, that the functions of the MTA with respect to public transportation are limited to financing and planning, and do not include the operation, maintenance, and control of any facility" (*Delacruz v Metropolitan Transp. Auth.*, 45 AD3d 482, 483 [1st Dept 2007]; *see also Archer v New York City Tr. Auth.*, 187 AD3d 564 [1st Dept 2020]). Plaintiff failed to raise a triable issue of fact as to the MTA's lack of liability.

Thus, defendants are granted summary judgment dismissing the complaint as against the MTA.

**159990/2019 TRUJILLO-DIAZ, CAMILO vs. NEW YORK CITY TRANSIT**
**Motion No. 003**

**Page 2 of 9**

As to MABSTOA, defendants failed to meet their prima facie burden, as they did not offer any evidence or legal argument that MABSTOA cannot be held liable for operation of the bus allegedly involved in the motor vehicle collision. The court notes that, in their answer, defendants admitted that the bus operator, defendant Charles Bellack, "operated said bus in the course of his employment for defendant [MABSTOA], and with the permission and consent of defendants NEW YORK CITY TRANSIT AUTHORITY and [MABSTOA]" (Defendants' Exhibit B in support of motion, answer ¶ 4 [NYSCEF Doc. No. 67]). As the motor vehicle collision admittedly occurred within the scope of Bellack's employment, MABSTOA would be vicariously liable for Bellack's negligence under the doctrine of respondeat superior (*Riviello v Waldron*, 47 NY2d 297, 302 [1979]; *Ryga v New York City Tr. Auth.*, 17 AD3d 561, 562 [2d Dept 2005]).

B. Serious Injury Threshold

1. "Permanent consequential" or "Significant" limitations in use

To establish a serious injury involving "permanent consequential" or "significant" limitations in use of a body function or part, a plaintiff must ultimately prove three elements: "(1) objective medical proof of an injury; (2) medical findings of limitations resulting from that injury, shown by quantitative or qualitative evidence, and (3) a causal connection between the injuries and the accident" (*Newby v Morales*, 220 AD3d 422, 422 [1st Dept 2023]).

On summary judgment, the defendant meets the prima facie burden by demonstrating that, as a matter of law, the plaintiff cannot establish at least one of these three elements which plaintiff must ultimately prove to prevail at trial. That is, the defendant meets the prima facie burden by establishing that: (1) there is no objective evidence of injury (*Aquino v Alvarez*, 162 AD3d 451, 451 [1st Dept 2018]); (2) the plaintiff has normal ranges of motion in the allegedly injured body parts, with no objective evidence of disability or permanency (*Peart v Carreras*, 227 AD3d 479, 479 [1st Dept 2024]; *Rosado v Haidara*, 224 AD3d 577, 577 [1st Dept 2024]); or (3) the alleged injuries were not causally related to the accident (*Ledesma v Rodriguez*, 217 AD3d 453 [1st Dept 2023]).

Defendants asserted that plaintiff did not suffer a serious injury, based on the affirmed reports of their expert orthopedist, Dr. Andrew N. Bazos, and expert radiologist, Dr. David Panasci.

Dr. Bazos conducted an orthopedic exam of plaintiff on August 10, 2021 (Defendants' Exhibit H [NYSCEF Doc. No. 73]). Examination of the *cervical spine* revealed normal ranges of motion in following planes (in degrees):

|  | Plaintiff |
|---|---|
| Flexion | 45 |
| Extension | 45 |
| Rotation R/L | 70 |

[* 3]

(*id.* at 7).  There was no paraspinal tenderness or spasm noted (*id.*).

Examination of the *thoracolumbar spine* revealed normal ranges of motion in the following planes (in degrees):

|  | Plaintiff |
| --- | --- |
| flexion | 90 |
| extension | 30 |

(*id.* at 7).  There was no spasm, and straight leg raise was negative on both sides at 90 degrees (*id.*).

Examination of *both shoulders* revealed normal ranges of motion in the following planes (in degrees):

|  | Plaintiff |
| --- | --- |
| Forward Elevation | 180 |
| Abduction | 180 |
| Internal rotation | 50 |
| External rotation | 45 |

(*id.*). No apprehension or impingement was noted in either shoulder, and O'Brien's test was negative bilaterally (*id.*).

According to Dr. Bazos, imaging studies revealed "[o]nly preexisting, multilevel degenerative disc disease . . . in the cervical spine and lumbar spine. The right shoulder MRI revealed nothing more than age-appropriate and chronic wear and tear" (*id.* at 9).

Dr. Panasci reviewed MRIs taken of plaintiff's cervical, thoracic, and lumbar spine, and right shoulder (Defendants' Exhibit I in support of motion [NYSCEF Doc. No. 74]).  Dr. Panasci noted that the MRI of plaintiff's cervical spine was a "poor-quality study," and "[a]s best as can be determined on this poor quality study there is no disc herniation, spinal cord compression or nerve root compression" (*id.* at 2). Dr. Panasci stated, "These imaging studies . . . do not demonstrate any evidence of any injury which could be related to the accident in question (*id.*).

Given all the above, defendants established prima facie that plaintiff did not sustain "permanent consequential" or "significant" limitations in use of the cervical, thoracic, and lumbar spine and right shoulder, within the meaning of Insurance Law § 5102 (d).  The affirmed report of Dr. Bazos stated that, two and a half years after the motor vehicle collision, plaintiff had full, normal ranges of motion of his cervical, thoracic, and lumbar spine and right shoulder (*Feliz v Fragosa*, 85 AD3d 417, 418 [1st Dept 2011]).  Additionally, Dr. Bazos also opined that plaintiff had pre-existing degenerative disc disease in his cervical and lumbar spine and chronic wear and tear in his right shoulder.  Dr. Panasci did not see any objective evidence of any injury to

**159990/2019   TRUJILLO-DIAZ, CAMILO vs. NEW YORK CITY TRANSIT**
**Motion No.  003**

**Page 4 of 9**

4 of 9

[* 4]

plaintiff's cervical spine. Thus, defendants also established prima facie that there was no causal connection between the motor vehicle collision and plaintiff's alleged injuries.

In opposition, plaintiff submits affirmed narrative reports from Dr. Jason R. Baynes, Dr. Manish Patel, Dr. Jospeh Weinstein, Dr. Andrew Merola, and Dr. Amit Khaneja.

Dr. Baynes examined plaintiff on August 16, 2022 (*see* Plaintiff's Exhibit B in opposition [NYSCEF Doc. No. 87]). Examination of plaintiff's *right shoulder* revealed decreased range of motion in the following planes (in degrees):

|  | Normal | Plaintiff |
|---|---|---|
| Forward Flexion | 180 | 140 |
| Abduction | 180 | 120 |
| Internal rotation | 70 | 60 |
| External rotation | 90 | 60 |

(*id.*). Dr. Baynes opined that there was direct causal relationship between the motor vehicle accident of January 17, 2019 and the injury to plaintiff's right shoulder (*id.*). He stated, in relevant part, "The patient states he had no problems with the right shoulder with full use of the right shoulder prior to this accident. However, after this accident his range of motion is permanently limited, and he has dysfunction with strength in that right shoulder" (*id.*).

Dr. Patel examined plaintiff on January 30, 2019, February 27, 2019, April 5, 2019, April 17, 2019, May 29, 2019, and June 26, 2019 (*see* Plaintiff's Exhibit C in opposition [NYSCEF Doc. No. 88]). At the first visit, Dr. Patel noted restriction of motion in plaintiff's cervical, thoracic, and lumbar spine and right shoulder, with pain (*id.* at 3). The restriction of motion was not measured in degrees. Orthopedic tests administered to plaintiff's shoulder (i.e., Hawkins' test, Empty Can Test) were positive (*id.* at 3). At the last visit on June 26, 2019, Dr. Patel noted, "Patient reports that his pain and mood is better. He says that his sleep improved as well as his depressive symptoms, he started to go tackling his problems. He had left shoulder surgery that improved" (*id.* at 26).

Dr. Weinstein examined plaintiff on October 2, 2019 (*see* Plaintiff's Exhibit D in opposition [NYSCEF Doc. No. 89]). During that visit, Dr. Weinstein found decreased range of motion in plaintiff's *cervical spine* (*id.*). Dr. Weinstein opined, "If the history given by the patient is accurate, then within a reasonable degree of medical certainty the above noted injuries were directly the result of the event/accident of this record" (*id.*).

Dr. Merola examined plaintiff on November 15, 2021 (Plaintiff's Exhibit E in opposition [NYSCEF Doc. No. 90]). Examination of plaintiff's *cervical spine* revealed ranges of motion in the following planes (in degrees):

**159990/2019   TRUJILLO-DIAZ, CAMILO vs. NEW YORK CITY TRANSIT**
**Motion No.  003**

**Page 5 of 9**

5 of 9

|  | Plaintiff |
|---|---|
| Extension | 35 |
| Flexion | 40 |
| Right Lateral Bending | 40 |
| Left Lateral Bending | 40 |
| Right Lateral Rotation | 35 |
| Left Lateral Rotation | 40 |

Dr. Merola did not set forth any normal values for these ranges of motion (*id.*). With regard to lumbar extension, Dr. Merola noted a positive sign to Phalen's maneuver (*id.*).

Dr. Khaneja, a neurologist, examined plaintiff on January 6, 2022 (*see* Plaintiff's Exhibit F in opposition [NYSCEF Doc. No. 91]).[1] Examination of plaintiff's *cervical spine* revealed ranges of motion in the following planes (in degrees):

|  | Normal | Plaintiff |
|---|---|---|
| Extension | **60** | **40** |
| Flexion | 50 | 50 |
| Left Rotation | 80 | 80 |
| Right Rotation | **80** | **60** |
| Right Lateral Bending | 80 | 80 |
| Left Lateral Bending | 45 | 45 |

(*id.* at 3 [emphasis added]). Examination of plaintiff's *thoracic spine* and *lumbar spine* revealed normal range of motion in all planes (*id.* at 3-4).

According to the unaffirmed radiology reports, MRIs taken of plaintiff's cervical, lumbar, and thoracic spine showed bulges at C4-C5, C5-C6 and C6-C7; herniations at T5-T6, T6-T7, T7-T8, and L1-L2; and bulges at L2-L3, L3-L4, L4-L5, and L5-S1 (*see* Plaintiff's Exhibit G in opposition [NYSCEF Doc. No. 92]). An MRI taken of plaintiff's right shoulder showed evidence for rotator cuff tendinitis and partial tear (*id.*).

Having reviewed plaintiff's evidence in opposition, the court finds that plaintiff failed to raise a triable issue of fact as to whether plaintiff suffered a "permanent consequential" or "significant" limitations in use of plaintiff's lumbar and thoracic spine. Plaintiff did not submit any evidence of recent range-of-motion deficits or qualitative limitations in the use of plaintiff's lumbar and thoracic spine to rebut defendants' prima showing of a lack of limitations in these affected body parts (*Kamara v Ajlan*, 107 AD3d 575, 576 [1st Dept 2013]).

Plaintiff also failed to raise a triable issue of fact as to whether plaintiff suffered a "permanent consequential" or "significant" limitations in the use of plaintiff's cervical spine. Although Dr. Merola examined plaintiff on November 15, 2021 and noted the

---

[1] According to plaintiff's counsel, Dr. Khaneja examined plaintiff on behalf of plaintiff's no fault carrier, State Farm (affirmation of plaintiff's counsel in opposition ¶ 54 [NYSCEF Doc. No. 84]).

**159990/2019  TRUJILLO-DIAZ, CAMILO vs. NEW YORK CITY TRANSIT**
**Motion No.  003**

**Page 6 of 9**

ranges of motion in plaintiff's cervical spine, he failed to compare those findings to any normal values (*Olivare v Tomlin*, 187 AD3d 642 [1st Dept 2020]; *Campbell v Wendt*, 152 AD3d 413, 414 [1st Dept 2017]; *Bray v Rosas*, 29 AD3d 422, 423 [1st Dept 2006]).

However, plaintiff raised a triable issue of fact as to whether plaintiff suffered a "permanent consequential" or "significant" limitations in the use of plaintiff's right shoulder. Dr. Baynes found limited ranges of motion of plaintiff's right shoulder in three planes, thus disputing Dr. Bazos's findings of normal range of motion. Dr. Baynes also opined that there was a direct causal relationship between the motor vehicle collision and plaintiff's shoulder injury, which adequately raises an issue of fact without the need to address the degenerative findings made by Dr. Bazos (*see Yuen v Arka Memory Cab Corp.*, 80 AD3d 481 [1st Dept 2011]).

In reply, defendants argue that Dr. Baynes cannot establish any causal link between the accident and plaintiff's right shoulder because plaintiff did not strike his right shoulder on the interior of his vehicle at the time of the accident (*see* reply affirmation of defendants' counsel ¶ 13 [NYSCEF Doc. No. 94]). In the court's view, such an argument raises an issue of the credibility of Dr. Baynes, which is for the trier of fact to resolve. Contrary to defendants' argument, Dr. Baynes's opinion is not conclusory, because his opinion is based on plaintiff's claim that he was asymptomatic before the motor vehicle collision, and there is an absence of medical records showing otherwise (*Dacosta v Gibbs*, 139 AD3d 487, 488 [1st Dept 2016]).

In sum, defendants are granted summary judgment dismissing plaintiff's claims of serious injury under the categories of "permanent consequential" or "significant" limitations in use of plaintiff's cervical, thoracic, and lumbar spine, whereas summary judgment dismissing plaintiff's claims of serious injury as to plaintiff's right shoulder is denied.

However, "[i]t is well settled that if a jury determines that the plaintiff has met the threshold for serious injury for any of his injuries, then it may award him damages for all injuries causally related to the accident, including those that do not meet the serious injury threshold" (*Celestine v Bonte*, 231 AD3d 665, 665 [1st Dept 2024]).

2. 90/180-day category

"Under Insurance Law § 5102 (d), an injury must be 'medically determined' to qualify under the 90/180–days category, meaning that the condition must be substantiated by a physician. Additionally, the condition must be causally related to the accident" (*Damas v Valdes*, 84 AD3d 87, 93 [2d Dept 2011] [internal citations omitted]).

"In order to establish prima facie entitlement to summary judgment under this category of the statute, defendant must provide medical evidence of the absence of injury precluding 90 days of normal activity during the first 180 days following the accident. However, we have previously held that a defendant can establish prima facie entitlement to summary judgment on

**159990/2019  TRUJILLO-DIAZ, CAMILO vs. NEW YORK CITY TRANSIT**                                    **Page 7 of 9**
**Motion No.  003**

7 of 9

this category without medical evidence by citing other evidence, such as the plaintiff's own deposition testimony or records demonstrating that he or she was not prevented from performing all of the substantial activities constituting customary daily activities for the prescribed period" (*Elias v Mahlah*, 58 AD3d 434, 435 [1st Dept 2009]).

Defendants met their prima facie burden of summary judgment by submitting portions of plaintiff's deposition testimony showing that plaintiff did not claim to have been confined to bed or home for the requisite amount of time (*Windham v New York City Tr. Auth.*, 115 AD3d 597, 599 [1st Dept 2014]). At his deposition, plaintiff testified as follows:

"Q: Were you confined to home for any period of time either after the accident or after the confinement to bed following surgery in connection with this accident?
A: **No.** During the pandemic, I was home for a while" (*see* Defendants' Exhibit E in support of motion, tr at 104, lines 11-17 [emphasis added]).

Plaintiff failed to raise a triable issue of fact as to whether plaintiff suffered a serious injury under the 90/180-day category.

Therefore, defendants are granted summary judgment dismissing plaintiff's claims of serious injury under the 90/180-day category.

## CONCLUSION

It is hereby **ORDERED** that defendants' motion for summary judgment dismissing the complaint is **GRANTED IN PART** as follows:

(1) the complaint is severed and dismissed as against defendant Metropolitan Transportation Authority, with costs and disbursements to this defendant as taxed by the Clerk upon submission of an appropriate bill of costs;

(2) plaintiff's claims of serious injury under the categories of "permanent consequential" and "significant" limitations in use of plaintiff's cervical, thoracic, and lumbar spine are dismissed;

(3) plaintiff's claims of serious injury under the 90/180-day category are dismissed;

and the remainder of defendants' motion for summary judgment dismissing the complaint is denied; and it is further

**159990/2019   TRUJILLO-DIAZ, CAMILO vs. NEW YORK CITY TRANSIT**
**Motion No.  003**

Page 8 of 9

8 of 9

**ORDERED** that the remainder of the action shall continue.

20250204174226RTSAIEBB9BCC492584CBFB49B2EB8A56EE5E6

| 2/4/2025 | | |
| --- | --- | --- |
| **DATE** | | **RICHARD TSAI, J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

159990/2019   TRUJILLO-DIAZ, CAMILO vs. NEW YORK CITY TRANSIT
Motion No.  003

Page 9 of 9

9 of 9

[* 9]